IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JESSE L. ROSS, JR.                                                                        PLAINTIFF

V.                                                            CAUSE NO.: 4:12CV120-SA-JMV

GREENWOOD UTILITIES                                                          DEFENDANT

MEMORANDUM OPINION

Defendant Greenwood Utilities files this Motion for Summary Judgment [42] as to all Plaintiff's claims on procedural and substantive grounds. Because the Court finds that Plaintiff may have failed to satisfy the exhaustion requirements of Title VII, has not complied with the pleading requirement of Section 1981, and has provided no genuine disputes of material fact as to any of his claims, the motion is GRANTED, and this case is DISMISSED.

*Factual and Procedural Background*

Greenwood Utilities, a municipal utility district, is governed by a three person commission nominated by the mayor and approved by the Greenwood City Council. For over twenty years, Jesse L. Ross was employed by the Greenwood Utilities, first as a systems engineer and finally as senior vice president for electric distribution and engineering. He held that position until his resignation in May of 2012. Ross contends his working conditions, under the newly hired Caucasian CEO, were so intolerable, he was forced to quit.

In 2010, the Greenwood Utilities Commission decided to reorganize the management of the municipal utility entity and thus began a search for a new CEO. Ross was originally on the search committee formed for the purpose of identifying potential candidates for that position. Indeed, while the search for CEO was ongoing, Ross was appointed as part of the three-person management team to be in charge of the day-to-day operations of Greenwood Utilities. Once

Ross submitted his application for the CEO position, however, he was removed from the search committee. Ross and two other candidates were interviewed in late summer of 2010. The three-member Greenwood Utilities Commission, however, was unable to unanimously agree to any of the candidates. In his Complaint, Ross contends that the two African Americans on the Commission supported him, while the Caucasian Chairman, James Quinn, supported a Caucasian candidate. The Commission never formally voted on any of the candidates to become the Greenwood Utilities' CEO.

In November of 2011, the Commission make-up changed from a majority African-American Commission, to a majority Caucasian Commission. The new Commission renewed efforts to find a CEO for Greenwood Utilities. The Commission only interviewed one candidate, Brian Finnegan, a Caucasian male. On January 21, 2012, all three Commissioners unanimously agreed on his hire and an employment contract between Finnegan and the Commission was signed. It is undisputed that Chairman Quinn notified the management team on January 24, 2012, of Finnegan's hire. However, the record fails to reflect Greenwood Utilities Commission minutes officially hiring Finnegan.

Finnegan documented complaints about Ross' work performance on May 18, 2012, and placed him on a six months' probation period pending improvement. In particular, Finnegan cited Ross's failure to respond to emails, failure to represent Greenwood Utilities in a positive manner, and failure to attend a scheduled meeting. Finnegan also claimed Ross failed to produce an assigned project and noted that "Mr. Ross does not appear to be a team player." Three days later, Ross submitted his resignation.

Ross filed a Charge with the EEOC on July 26, 2012 on the basis that he was not selected as CEO and was constructively discharged because of his race. Once he received his right to sue

letter, he instituted this action in which he alleges Greenwood Utilities discriminated him based on his race under Title VII by failing to promote him and by constructively discharging him, discriminated against him pursuant to Section 1981, and breached his employment contract by constructively discharging him. Defendant has filed a Motion for Summary Judgment. Plaintiff's response was extremely untimely without any explanation; therefore, the Court has struck that Response and will not consider it on summary judgment.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Here, Plaintiff's untimely response has been struck by the Court. Therefore, pursuant to Federal Rule of Civil Procedure 56(e), the Court considers the facts as represented in the Motion for Summary Judgment to be undisputed for purposes of the motion.

*Analysis and Discussion*

*Failure to Promote under Title VII*

Initially, Defendant argues that Plaintiff failed to file his charge with the EEOC within 180 days of the alleged discriminatory act. This 180-day time period acts as a statute of limitations. Hood v. Sears Roebuck & Co., 168 F.3d 231, 232 (5th Cir. 1999). Indeed, discrete employment actions, "such as termination, failure to promote, denial of transfer, or refusal to hire," occurring more than 180 days before an EEOC charge is filed are "untimely filed and no longer actionable." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-15, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). This limitations period "begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred." Ramirez v. City of San Antonio, 312 F.3d 178, 181 (5th Cir. 2002) (citations and quotations omitted). The United States Supreme Court has noted that a "discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" Nat'l R.R. Passenger Corp., 536 U.S. at 110, 112 S. Ct. 2061; see also Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 352 (5th Cir. 2001) ("An employee who claims to be the victim of a racially motivated failure to promote . . . . is put on notice that his rights have been violated at the time the adverse employment decision occurs, and must therefore bring the claim within 180 days of the adverse decision").

Here, the Court is faced with determining what day Plaintiff's failure to promote "happened." Defendant argues that the alleged discriminatory act occurred on the date Plaintiff

4

received notice that Finnegan would be taking over as CEO. Plaintiff submitted his resume in August of 2010 and was interviewed by the CEO search committee that same month. The position remained unfilled until January of 2012. As of January 2012, Plaintiff was never officially told that he was not going to be hired. He further testified that he assumed the hiring of the CEO had been tabled for the 2011 year, but once Chairman James Quinn informed him that Finnegan had been hired as CEO, Ross unequivocally knew, as of January 24, 2012, that he had not been promoted.

By request of the Court, the Plaintiff supplemented the record with the minutes of the Greenwood Public Utilities Commission showing that Brian Finnegan was officially hired on February 3, 2012.[1] Greenwood Utilities is a city-owned utility that provides electric and water services. The Mississippi Supreme Court has noted that the board of a utilities district is a "public corporation and body politic" such that the public utilities board's actions fall under those generally recognized holdings that limit such bodies to speak and act only through their minutes. Rawls Springs Util. Dist. v. Novak, 765 So. 2d 1288, 1291 (Miss. 2000). Indeed, Mississippi strictly adheres to the "fundamental and inviolable policy" that "public boards speak only through their minutes and their actions are evidenced solely by entries on the minutes." Pike County v. Indeck Magnolia, LLC, 866 F. Supp. 2d 589, 591-92 (S.D. Miss. 2012) (quoting Thompson v. Jones County Cmty. Hosp., 352 So. 2d 795, 796 (Miss. 1977)). Because "[t]he minutes of the [public] board . . . are the sole and exclusive evidence of what the board did" . . . "the minutes . . . must be the repository and the evidence of their official acts." Thompson, 352 So. 2d at 796.

---

[1] The Court requested such supplementation to be included in the record by August 8, 2014. Plaintiff responded untimely on August 11, 2014. The Court is under no obligation to consider the late-filed supplement.

Defendant contends that the pertinent date here is when the adverse employment decision was communicated to the plaintiff, not the date when the decision goes into effect. According to the Fifth Circuit, the 180 day limitations period begins to run on the date the plaintiff had "knowledge sufficient to support the [Title VII] claim." See Phillips v. Leggett & Platt, Inc., 658 F.3d 452, 453-55 (5th Cir. 2011) (noting that the 180-day period "begins when an employee is unambiguously informed" of the adverse employment action). According to Defendant, Plaintiff's limitations period began to run on January 24, 2012, the date the Plaintiff unequivocally and admittedly had notice that he would not be hired as the new CEO. After reviewing the submissions of the parties and the case law authority, the Court determines that Plaintiff received notice that he would not be hired in the CEO position on January 24, 2012. Accordingly, Plaintiff's charge of discrimination filed July 26, 2012, was outside the 180-day limitations period. Plaintiff's Title VII claims are thus time-barred.

In an abundance of caution, however, due to the extensive case law noting that a public board can only take action through its minutes, the Court analyzes Plaintiff's Title VII claims as if they were timely filed.[2] In order to state a prima facie case of discrimination based on a failure to promote, the Plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for position; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and his employer continued to seek applicants from persons of his qualifications. Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 324 (5th Cir. 2002) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); Bennett v. Total Minatome Corp., 138 F.3d 1053, 1060 (5th Cir. 1998)). If Ross establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory

---

[2] The Court acknowledges that the Board's official minutes state that Finnegan was hired on February 3, 2012, which, if the Court were to rely on Mississippi state law regarding public board actions, would be within 180 days of the filing of the EEOC charge.

reason for its decision not to promote Ross. Once Defendant articulates such a reason, Ross must show that Greenwood Utilities discriminated against him, and may do so by demonstrating that Defendant's articulated reason is merely a pretext for discrimination. Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. 1817).

Defendant contends Plaintiff cannot satisfy his prima facie case as he was not "qualified for the position." Indeed, the job posting required applicants to have "[a] Bachelor's Degree in Mechanical or Electrical Engineering or equivalent experience with a minimum of 10 to 15 years experience in a senior utility management position." It is undisputed that Plaintiff has a Bachelor's Degree in Electrical Engineering. While Plaintiff did acknowledge that he lacked the "minimum of 10 to 15 years in a senior utility management position," it appears, based on Brian Finnegan's resume that he lacked those years in a senior utility management position as well.

"An employer may establish job requirements, and rely on them in arguing that a prima facie case is not established because the employee is not 'qualified.'" Johnson v. Louisiana, 351 F.3d 616, 622 (5th Cir. 2003) (citation omitted). But those qualifications must be objective ones. Id. An employer may not "'utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process . . . is challenged as discriminatory.'" Medina v. Ramsey Steel Co., 238 F.3d 674, 681 (5th Cir. 2001) (quoting Crawford v. W. Elec. Co., 614 F.2d 1300, 1315 (5th Cir. 1980)). Additionally, "[a]llowing an employer to point to objective requirements in arguing that a plaintiff is unqualified, even though the requirements were not applied to other employees, would subvert the intent of Title VII and McDonnell Douglas." Johnson, 351 F.3d at 624. In those cases, a plaintiff may overcome a lack of objective qualifications at the prima facie stage if he can establish that the employer applied

an objective requirement subjectively by promoting employees lacking the qualification. Id. at 624-25 ("[H]iring an employee who does not meet the company's objective requirements is basically a subjective determination: the employee can do the job despite the fact that she does not meet the technical requirements."). The Court finds that the Plaintiff has surpassed this prima facie burden.

Greenwood Utilities offer that Ross was not promoted to CEO as Finnegan was the best candidate for the CEO position in light of his resume and experience in utilities management. Plaintiff's deposition testimony reveals that Ross did not know why Finnegan was hired over him. Ross was further unable to offer any evidence that the Commission's decision was pretextual of a discriminatory motive on the part of that body. Thus, Ross failed to surpass his burden on summary judgment of showing a genuine dispute of material fact as to his failure to promote claim. This Title VII claim is due to be dismissed.

*Constructive Discharge under Title VII*

Plaintiff additionally charged that he was constructively discharged because of his race. There is no dispute regarding the timeliness of Plaintiff's constructive discharge claim to the EEOC.

As the Fifth Circuit has explained, "constructive discharge is not itself a cause of action. It is a means of proving the element of an adverse employment action where the employee quits instead of being fired." Wells v. City of Alexandria, No. 03-30750, 2004 U.S. App. LEXIS 8525, 2004 WL 909735, *3 (5th Cir. Apr. 29, 2004). "[A]n adverse employment action consists of 'ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating.'" Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004) (citing Felton v. Polles, 315 F.3d 470, 486 (5th Cir. 2002)) (emphasis in original). "Where, as here, an employee

resigns, []he may satisfy the discharge requirement by proving constructive discharge." Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997) (citation omitted) (emphasis in original). According to the Fifth Circuit Court of Appeals,

> An employee who resigns may demonstrate constructive discharge by two means. First, she can "offer evidence that the employer made her working conditions so intolerable that a reasonable employee would feel compelled to resign." Barrow v. New Orleans Steamship Assoc., 10 F.3d 292, 297 (5th Cir. 1994). Second, an employee can prove constructive discharge with evidence that she was given an ultimatum requiring her to choose between resignation and termination. Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997).

David v. Pointe Coupee Parish Sch. Bd., 247 F.3d 240, PPC (5th Cir. 2001). To determine whether a reasonable person would feel compelled to resign, the Court looks for the following factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001) (punctuation omitted). The plaintiff must prove "a greater degree of harassment than that required by a hostile environment claim." Id. Discrimination alone is insufficient to establish constructive discharge; there must be aggravating factors. Id.

Here, Plaintiff contends his working conditions were intolerable once Finnegan counseled him about performance issues and placed Ross on a performance plan. Ross testified that his supervisor "threatened to fire me." He stated,

> Every day I came to work under him it was another round of you didn't do this or you didn't do that or that didn't get done or you're not a team player. So I just don't think anybody has to work under those terrible situations. The

> complete brow beating, the watching, you know, every move you make, the note taking, the picture taking.

Plaintiff has failed to put forth any allegations of discrimination motivating the performance plan. Further, Plaintiff has not alleged any "aggravating factors" to establish constructive discharge. Accordingly, Plaintiff has failed to show he suffered an adverse employment action. Since he cannot establish a prima facie case of discrimination, the Defendant's request for summary judgment as to this claim is granted.

*Section 1981*

Defendant contends that Plaintiff's Section 1981 claim should be dismissed procedurally and substantively. Primarily, Defendant notes that Ross did not bring him claim pursuant to 42 U.S.C. Section 1983. Indeed, a perusal of Plaintiff's complaint yields no mention of that statute.

"Claims that a municipality violated § 1981 must be brought under § 1983, which provides the remedial scheme to challenge state action." Glaskox v. Harris County, 527 F. App'x 525, 528 (5th Cir. 2013) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735-36, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989)). "Section 1981 does not itself create a cause of action against a municipality; rather, a plaintiff complaining of a municipality's violations of § 1981 must assert his claims via § 1983." Crawford v. City of Houston, Tex., 260 F. App'x 650, 652 (5th Cir. 2007) (citing Felton v. Polles, 315 F.3d 470, 481-82 (5th Cir. 2002); Oden v. Oktibbeha Cnty., Miss., 246 F.3d 458, 463-64 (5th Cir. 2001)). This requirement is "not a mere pleading formality," and requires dismissal if not properly pled. Felton, 315 F.3d at 482.

As noted, Plaintiff failed to pursue his Section 1981 claim through the proper vehicle, Section 1983. Accordingly, that claim is dismissed.

*Breach of Contract Claim*

Plaintiff's allegation that Greenwood Utilities breach his employment contract is based on his assertion that that entity "constructively terminat[ed] him on account of his race." As noted above, Plaintiff has failed to put forth sufficient evidence that he was constructively discharged. Accordingly, this claim is also dismissed. See Cothern v. Vickers, Inc., 759 So. 2d 1241, 1246 (Miss. 2000) (noting the same standard under Mississippi law as for federal civil rights claims for constructive discharge).

*Conclusion*

Plaintiff's claims do not survive summary judgment. Accordingly, Defendant's motion is GRANTED, the Plaintiff's claims are DISMISSED, and this case is CLOSED.

SO ORDERED, this the 22nd day of August, 2014.

                                       **/s/ Sharion Aycock**
                                       **U.S. DISTRICT JUDGE**